IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDSAY GOLF GROUP LTD.; *et al.*, | ) |
| Plaintiffs, | ) 2:24-CV-781 |
| v. | ) |
| XTO ENERGY INC., | ) |
| Defendant. | ) |

# MEMORANDUM ORDER

Plaintiffs are royalty owners under oil-and-gas leases with XTO Energy. They claim that XTO breached their leases, by failing to pay them royalties that they are owed. They seek compensatory damages, punitive damages, and an accounting. XTO now moves to dismiss the operative complaint in this case (the first amended complaint). After careful consideration, the Court grants in part and denies in part XTO's motion. Plaintiffs have sufficiently pled their breach-of-contract claim, but their claims for an accounting and punitive damages are not proper and so will be dismissed.

## BACKGROUND

In 2009, each Plaintiff entered into an oil and gas lease agreement with the Penn Virginia Oil and Gas Corporation, which was then assigned to XTO. ECF 12, ¶¶ 12-13. The lease agreements between each Plaintiff and XTO are identical. *Id.*, ¶ 12.

Under each lease, XTO was required to pay a royalty consisting of 18% of the net proceeds from its sale of gas, computed at the wellhead. *Id.*, ¶¶ 14-15. Prior to July 2023, XTO sent Plaintiffs monthly royalty payments and monthly statements identifying the amount of gas produced from the wells in which Plaintiffs had

ownership interests and the payment amount attributable to each of these wells. *Id.*, ¶¶ 16-20. In July 2023, XTO ceased sending monthly payments and statements without explanation, and at least up to the date that the first amended complaint was filed, has not made any royalty payments or sent any monthly statements. *Id.*, ¶ 21.

XTO made oral representations to Plaintiff Lindsay Golf Group that it stopped sending payments because it was recouping overpayments that it had previously sent. *Id.*, ¶ 25. In November 2023, Lindsay Golf Group wrote a letter to XTO demanding a written explanation for why XTO stopped sending royalty payments, as well as information about the recoupment. ECF 12-2. In response, XTO explained that, from May 2022 to September 2022, some volumes of gas from a well that Lindsay Golf Group didn't own, the Trilogy 5HU well, were erroneously allocated to two wells that Lindsay Golf Group did own. ECF 23, p. 2.[1] Essentially, this meant that Lindsay Golf Group (and other Plaintiffs with no interest in the Trilogy 5HU well) were erroneously paid for volumes associated with the Trilogy 5HU, while the owners that did have an interest in the Trilogy 5HU well were underpaid. ECF 26, 5:8-13. To recoup the overpayments that were made to Lindsay Golf Group and the other owners of the two wells impacted by the allocation error, XTO suspended royalty payments to these owners beginning in August 2023. ECF 23, p. 4. XTO conveyed to Lindsay Golf Group that the royalties would be suspended until XTO recouped its overpayments, which would depend on the amount of production from those two wells and the price of gas during the period of recoupment. *Id.*[2]

---

[1] Plaintiffs did not attach XTO's response letter to its complaint. But XTO attached it as a sealed exhibit to its motion to dismiss, and the Court can properly consider this letter on a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[2] Because the price of gas from May 2022 to September 2022 was significantly higher than the price of gas in the latter half of 2023 (when the recoupment was in progress),

Plaintiffs sued XTO in state court, and XTO removed the case to federal court based on diversity jurisdiction. ECF 1. XTO then moved to dismiss Plaintiffs' original complaint. ECF 8. After XTO filed its first motion to dismiss, Plaintiffs filed an amended complaint, so the Court mooted XTO's first motion to dismiss. ECF 13.

In their first amended complaint, Plaintiffs bring a breach-of-contract claim (Count I) for failure to pay royalties and an accounting claim (Count II) to account for the sales of gas made by XTO after July 2023. ECF 12. Specifically, Plaintiffs deny that XTO was overpaid and that gas was erroneously allocated to the wells that they own. *Id.*, ¶¶ 27, 29. They allege that XTO's failure to pay royalties is a breach of the lease agreements, which do not "permit [XTO] to cease royalty payments to the Plaintiffs in order to recoup overpayments." *Id.*, ¶¶ 48-49. Plaintiffs also object to XTO's ceasing of the monthly statements, which resulted in Plaintiffs having no information about the production of the wells, the amounts of overpayment and recoupment, or the progress made with the recoupments. *Id.*, ¶ 31.

XTO's motion to dismiss Plaintiffs' first amended complaint is now before the Court. ECF 14. XTO first argues that none of the Plaintiffs, except for Lindsay Golf Group, can bring suit at this point because they failed to comply with the notice-and-cure provisions in their leases, under which Plaintiffs were required to give XTO written notice of an alleged breach and 60 days to "commence the compliance with the obligations imposed by virtue of the lease" before bringing suit for a breach of the lease. ECF 15, p. 4.[3] Next, it argues that the breach-of-contract claim fails because

XTO anticipated that the time required for recoupment would be greater than the 5-month period during which the overpayments to Lindsay Golf Group occurred. *Id.*

[3] The notice-and-cure provision in the lease states: "The breach by Lessee of any obligations arising hereunder shall not work a forfeiture or termination of this lease . . . nor be ground for cancellation hereof, in whole or in part, unless Lessor shall notify Lessee in writing of the specific facts relied upon in claiming a breach thereof, and Lessee, if in default, shall have sixty (60) days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this

Plaintiffs don't adequately plead breach or damages and that the accounting claim fails as a matter of law because there is no valid breach-of-contract claim. *Id.*, p. 2. Finally, it argues that Plaintiffs' demand for punitive damages should be stricken because it fails as a matter of law. *Id.*, p. 13.

After full briefing, the Court heard oral argument on the motion. ECF 24. For the reasons that follow, the Court denies XTO's motion to dismiss the claim for breach of contract at Count I. The accounting claim at Count II is dismissed because legal accounting is not an independent cause of action, but Plaintiffs may seek legal accounting as a potential form of relief to Count I. The Court grants XTO's motion to dismiss Plaintiffs' request for punitive damages.

## DISCUSSION & ANALYSIS

**I.    Plaintiffs' failure to comply with the notice-and-cure provision in their leases is excused.**

XTO argues that Lindsay Golf Group is the only Plaintiff that can bring suit, because the other Plaintiffs did not comply with the notice-and cure-provision in their leases.[4] The purpose of a notice-and-cure provision is "to provide the party

---

instrument, and if Lessee shall fail to do so then Lessor shall have grounds for action in a court of law or such remedy to which he may be entitled." ECF 12-1, p. 2. Lindsay Golf Group complied with the notice-and-cure provision in its lease because it sent a letter to XTO in November 2023 requesting information about the ceasing of royalty payments and noting its intention to bring suit if XTO did not provide this information. ECF 12-2.

[4] Plaintiffs argue that XTO's notice-and-cure argument should be dismissed pursuant to Fed. R. Civ. P. 12(g)(2) because it was not raised in XTO's first motion to dismiss. ECF 17, p. 7. The Court finds that, even assuming Rule 12(g)(2) was violated, XTO's argument "can be considered at this stage of the case to promote the just, speedy and inexpensive determination of this action." *Wright v. Providence Care Ctr., LLC*, No. 17-747, 2018 WL 1759464, at *4-5 (W.D. Pa. Apr. 12, 2018) (Conti, J.) (observing that "it would serve no purpose to require defendants to file an answer and then reassert their argument in a motion for judgment on the pleadings or at summary judgment").

purportedly in default with an opportunity to cure before the non-defaulting party can bring suit to invalidate a lease." *Masciantonio v. SWEPI, LP*, 195 F. Supp. 3d 667, 694 (M.D. Pa. 2016), *vacated on other grounds*, 2017 WL 2616915 (M.D. Pa. Mar. 13, 2017); *see also Linder v. SWEPI, LP*, 549 F. App'x 104, 108 (3d Cir. 2013) (nonprecedential) (noting that the purpose of a notice-and cure-provision is to "improve the chances of an out-of-court resolution in the event of a breach by giving [the breaching party] a brief grace period to right its wrong"). As courts have recognized, "to the extent that the notice provision is a condition precedent to some claims, compliance could be excused if, under the circumstances, compliance would be meaningless, add nothing or be a gesture in futility." *Irving Tr. Co. v. Nationwide Leisure Corp.*, 95 F.R.D. 51, 74 (S.D.N.Y. 1982); *see also Borough of Lansdale, Pennsylvania v. PP & L, Inc.*, No. 02-8012, 2006 WL 859431, at *5 (E.D. Pa. Mar. 31, 2006) (strict compliance with a notice provision is futile when "plaintiff *substantially complied* with the contractual notice provisions by giving some form of actual notice to the defendants, the defendants were given an opportunity to remedy the dispute, and yet the defendants made it clear they would not do so").

The parties do not dispute that Lindsay Golf Group complied with the contractual notice-and-cure provision, in its November 2023, letter to XTO requesting specific information about the alleged recoupment. ECF 12-2.[5] XTO responded to the letter, explaining that Lindsay Golf Group received an overpayment of royalties from May 2022 through September 2022 as a result of an erroneous allocation of gas volumes from a well it did not own, and that its royalties—as well as the royalties to

---

[5] The information Lindsay Golf Group requested include wellhead data specific to each well in which it had interest in; disclosure of the transmission line to which the gas is taken to market; maps related to the wells and gas transmission line; whether the alleged recoupment was equally distributed between the wells that it owned; which XTO division made the allocation error; and whether it would be notified when the recoupment is complete. *Id.*

be paid to the other owners of the wells impacted by the error—would "remain in suspense" until the overpayment was recouped, at which time the royalty payments to Lindsay Golf Group would recommence. ECF 23. Based on these correspondences, as well as the various oral communications between XTO and Lindsay Golf Group, the purpose of the notice-and-cure provision has been served because XTO has already been given an adequate opportunity to remedy the dispute now before the Court.

It is inconsequential that the other Plaintiffs did not provide notice because any additional notice by the other Plaintiffs about the disputed overpayments would be meaningless, and XTO would not have responded any differently. Indeed, XTO confirmed this during oral argument on the motion to dismiss, when it indicated that it would have provided the same explanation about the recoupment to the other Plaintiffs had they complied with the notice-and-cure provision. ECF 26, 15:10-16. The only thing that would have been different is that the details about the recoupment (*e.g.*, spreadsheets showing the amount of overpayment and offsets; suspense details; and check details) would be unique to each Plaintiff because each Plaintiff has interests in different wells. *Id.*, 15:10-20. But the fact that the "math would be different" is not a meaningful distinction, when "the form of documents and the explanation would stay the same." *Id.*, 15:19-20. Therefore, the Court excuses the other Plaintiffs' technical defects in providing notice. *See Mahoney v. Sony Music Ent.*, No. 12-5045, 2013 WL 491526, at *7 (S.D.N.Y. Feb. 11, 2013) ("Where, as here, the notice requirement is a condition precedent not to forfeiture or termination [of the contract], but rather to bringing an action for unpaid royalties, the notice at issue should be examined from a more relaxed perspective." (cleaned up)).

**II.     Plaintiffs properly state a claim for breach of contract.**

XTO argues that Plaintiffs have failed to plead the second and third elements for a breach-of-contract claim—*i.e.*, breach and damages. ECF 15, p. 6. The elements of a breach-of-contract claim under Pennsylvania law[6] are: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Rupert v. Range Res. - Appalachia, LLC*, No. 21-1281, 2022 WL 1689510, at *8 (W.D. Pa. May 26, 2022) (Dodge, J.). "The burden of proof in a contract action is on the party asserting the breach who must prove the breach by a preponderance of the evidence." *Giacone v. Virtual Officeware, LLC*, No. 13-1558, 2014 WL 7070205, at *11 (W.D. Pa. Dec. 12, 2014) (Schwab, J.), *aff'd*, 642 F. App'x 137 (3d Cir. 2016).

As to breach, XTO argues that the lease does not require XTO to pay *monthly* royalties to Plaintiffs—it only requires XTO to pay 18% of "the net proceeds realized by XTO from the sales of gas attributable to the lease, computed at the wellhead[.]" ECF 15, p. 8.[7] And since Plaintiffs received a mistaken overpayment, and do not otherwise allege that they have not received a royalty based on the "net proceeds" realized by XTO, XTO argues that they haven't pled a breach of an express term of the lease. *Id.*; ECF 18, p. 2. Essentially, XTO says that Plaintiffs cannot plead breach because they are not entitled to keep overpaid royalties. ECF 26, 12:21-25.

---

[6] Because the parties in their briefs agree that Pennsylvania law applies, the Court need not conduct a choice-of-law inquiry. *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 737 (E.D. Pa. 2013) (choice of law inquiry was not necessary when both parties agreed that Pennsylvania law applies).

[7] Paragraph 3 of the lease, which Plaintiffs alleged XTO breach, states in relevant part: "On gas of whatsoever nature or kind, including coalbed methane gas and other gases, liquid hydrocarbons and their respective constituent elements, casinghead gas or other gaseous substances, produced from the Land, or Lands or leases unitized therewith (Gas), Lessee shall pay as royalty, eighteen-one hundredth (18/100) of the net proceeds realized by Lessee from the sale thereof, computed at the wellhead." ECF 12, ¶¶ 14, 49.

Plaintiffs allege the following facts in the first amended complaint: (1) the leases require XTO to pay 18% of the net proceeds realized by XTO from the sale of the gas, computed at the wellhead; (2) monthly royalty payments were received until July 2023, when payments ceased altogether; (3) XTO did not present documented evidence that the allocation error or the overpayments to Plaintiffs occurred, so Plaintiffs deny that the overpayments took place; (4) no clause in the lease permits XTO to cease royalty payments to recoup overpayments; (5) "[f]ailing to provide royalties is a breach" of the lease agreements; and (6) "[t]here is due and owing to the Plaintiffs from the Defendant royalties from the sale of gas sold by the Defendant under the lease agreement." ECF 12, ¶¶ 14-18, 27-29, 48-49, 63.

The Court finds that, at this juncture, these allegations sufficiently state a claim for breach of contract based on XTO's failure to pay royalties due to Plaintiffs under the royalty clause in the leases. Because Plaintiffs deny that they received overpayments from XTO and that an allocation error occurred, they are essentially alleging that they are entitled to the royalties that are held in suspense by XTO until the recoupment is completed. Certainly, Plaintiffs could have pleaded their entitlement to the suspended royalties with more specificity in the amended complaint (*e.g.*, plead the volumes produced from the wells they owned, and the royalties owed but not paid based on those volumes), but after construing the factual allegations and reasonable inferences in Plaintiffs' favor, the Court finds them to be sufficient.[8] XTO's arguments pertaining to the correctness of the recoupment are more appropriately raised as a defense. *See DDR Weinert, LTD v. Ovintiv USA, Inc.*,

---

[8] Additionally, during oral argument, Plaintiffs clarified that they are alleging that they were entitled to the suspended royalties and that XTO failed to pay them the royalties due to them under the royalty clause (*e.g.*, 18% of the net proceeds). ECF 26, 25:22-26:20. Plaintiffs expressed that, if XTO had merely stopped royalty payments because it ceased production, then there would be no breach. *Id.*, 27:8-14. But because Plaintiffs are disputing XTO's claim that there was an allocation error, they claim they are entitled to the suspended royalties. *Id.*, 27:15-28:2.

No. 22-00558, 2023 WL 4054600, at *4 (W.D. Tex. June 16, 2023) (explaining that lessees can assert the defense of recoupment against claims of underpayment brought by lessors).

As to damages, XTO argues that its post-complaint notice of removal that identified the amounts of overpayment to each Plaintiff can't serve as compensatory damages because they are not payments that are owed under the leases. ECF 15, pp. 9-10. But because the parties clearly dispute the existence and extent of overpayment, Plaintiffs can properly allege that the loss sustained as a result of the breach of contract is the amount of royalties currently held in suspense by XTO since August 2023—and Plaintiffs allege exactly this in the amended complaint. *See* ECF 12, ¶¶ 37-38 ("Presumably, the figures set forth therein [in XTO's notice of removal] are the amount of royalty payments which XTO has withheld and presumably in the future, will withhold from the Plaintiffs herein. Thus, it is alleged by the Plaintiffs that these are specific amounts of damages that have been withheld from the Plaintiffs or will in the future be held.").

Thus, the Court finds that Plaintiffs have sufficiently pled the elements of their contract claim.

### III. Plaintiffs may seek legal accounting as a form of relief to Count I, but the accounting claim at Count II is dismissed.

Plaintiffs' second claim is for an accounting. The Court dismisses this claim, as it is technically not a standalone claim.

"Pennsylvania recognizes the right to a legal or equitable accounting in certain circumstances." *Canfield v. Statoil USA Onshore Props. Inc.*, No. 16-0085, 2017 WL 1078184, at *25 (M.D. Pa. Mar. 22, 2017). Plaintiffs do not specify if they are seeking legal accounting or equitable accounting, but equitable accounting is not an available remedy for Plaintiffs because "equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the

accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law." *Pollock v. Energy Corp. of Am.*, No. 10-1553, 2011 WL 5977422, at *2 (W.D. Pa. Nov. 29, 2011) (Mitchell, J.) (cleaned up).  Plaintiffs have an adequate remedy at law: the breach-of-contract claim at Count I, which would allow Plaintiffs to obtain the sought-after information through discovery.  *See McWreath v. Range Res.--Appalachia, LLC*, 81 F. Supp. 3d 448, 468 (W.D. Pa. 2015) (Fischer, J.) ("[A]n equitable accounting claim should not be used as a vehicle to obtain information which would be subject to discovery in a separate civil action."), *aff'd*, 645 F. App'x 190 (3d Cir. 2016).

"[A] legal accounting under Pennsylvania law is permitted by operation of Pennsylvania Rule of Civil Procedure 1021(a) and is merely an incident to a proper assumpsit claim." *Rupert*, 2022 WL 1689510, at *9 (cleaned up).  Therefore, "a legal accounting requires a valid contract, either express or implied, and a breach of that contract." *Canfield*, 2017 WL 1078184, at *25.  It also requires that either: "(1) the defendant received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for the monies received by the defendant, or (2) the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him." *Id.* (cleaned up).  As discussed above, Plaintiffs have alleged a plausible breach-of-contract claim based on unpaid royalties.  And they have alleged that XTO has refused to account to Plaintiffs for the sales of gas made and that Plaintiffs are "unable to state the exact amount due [to] them as no account has ever been rendered to them" by XTO.  ECF 12, ¶¶ 61-63.

Plaintiffs may seek legal accounting as a form of relief to their breach-of-contract claim.[9] However, because legal accounting is not a standalone cause of action (and there is no basis for Plaintiffs to seek equitable accounting), the claim at Count II is dismissed without prejudice to Plaintiffs' ability to seek legal accounting as a remedy. *See Zamias v. Fifth Third Bank*, No. 17-153, 2018 WL 355462, at *17 (W.D. Pa. Jan. 9, 2018) (Gibson, J.) ("[A] legal accounting is not a separate claim but rather a form of relief that accompanies a formal breach of contract claim."); *Pflasterer v. Range Res.-Appalachia, LLC*, No. 18-1437, 2019 WL 4242057, at *6 (W.D. Pa. Sept. 6, 2019) (Baxter, J.) ("Under Pennsylvania law, a legal accounting is a potential remedy for separate legal claims, such as breach of contract.").

## IV.  Plaintiffs are not entitled to punitive damages as a matter of law.

The Court grants XTO's motion to dismiss Plaintiffs' request for punitive damages under Counts I and II because, "under Pennsylvania law, punitive damages are not recoverable in a breach of contract claim." *Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir. 2017). And since "a legal accounting is not a separate claim but rather a form of relief that accompanies a formal breach of contract claim[,]" punitive damages are also not available for Plaintiffs' request for legal accounting. *Zamias*, 2018 WL 355462, at *17. *See Bestherb, Inc. v. Yinlink Int'l Inc.*, No. 22-06548, 2024 WL 3898039, at *7 (D.N.J. Aug. 22, 2024) (explaining that if punitive damages aren't available for breach-of-contract claim, it follows that punitive

---

[9] Plaintiffs also alleged that XTO's "failure to provide monthly statements is a breach of an implied term of the contract[.]" ECF 12, ¶ 64. XTO argues that Plaintiffs can't plead a breach of an implied duty for XTO to provide monthly statements because there aren't any "past practice[s]" or "industry standards" to support this implied contractual term. ECF 15, p. 12. But because Plaintiffs are not premising their breach-of-contract claim on this alleged implied duty and this alleged implied duty is unnecessary for Plaintiffs' accounting claim, the Court finds it unnecessary to address this point.

damages wouldn't be available for the account stated claim, which is a "species" of contract claims).

* * *

Therefore, after careful consideration, it is hereby **ORDERED** that XTO's motion to dismiss (ECF 14) is **GRANTED in part and DENIED in part**. The Court grants XTO's motion as to Count II without prejudice to Plaintiffs' ability to seek legal accounting as a form of relief to Count I, and as to Plaintiffs' claim for punitive damages under Counts I and II. In all other respects, the motion is **DENIED**.

Date: November 22, 2024                    BY THE COURT:

                                           /s/ *J. Nicholas Ranjan*
                                           United States District Judge