**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LINDSAY GOLF GROUP LTD.,<br>CAROL KRONEN and<br>WILLIAM KRONEN<br>ALEXANDER H. LINDSAY, JR.<br>and PATRICIA W. LINDSAY,<br>JOHN LINDSAY and<br>ERICA LINDSAY,<br>JAMES LINDSAY and<br>MARY LINDSAY,<br>CHARLES LINDSAY,<br>ANDREW LINDSAY and<br>LISA LINDSAY,<br>THOMAS LINDSAY and<br>BETH LINDSAY AND<br>BETTY G. LINDSAY OIL AND GAS<br>TRUST<br><br>Plaintiffs,<br><br>v.<br><br>XTO ENERGY, INC.<br><br>Defendant. | Case No. 24-781<br><br>Electronically Filed |

**DEFENDANT XTO ENERGY INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFFS' COUNTERMOTION FOR SUMMARY JUDGMENT**

Defendant XTO Energy Inc. ("XTO") moved for summary judgment on the basis that Plaintiffs did not meet their burden of proof showing that (1) XTO breached any duty in its lease contracts with Plaintiffs or (2) Plaintiffs suffered recoverable damages under their leases. In support, XTO cited undisputed facts and foundational Pennsylvania contract law. In response, Plaintiffs do not contest the facts or the law cited by XTO, but instead wave this entire argument aside, asserting the fact that "Plaintiffs have no evidence **is of no moment**." *See* ECF 54 at 18 (emphasis added). The admission of the complete absence of evidence to support their breach of contract claim against XTO requires the entry of summary judgment against Plaintiffs.

Plaintiffs do not raise any genuine issues of fact relating to the documents XTO produced or the testimony its witnesses provided. Instead, Plaintiffs' arguments rest on abstract and irrelevant contentions and improper burden-shifting. Plaintiffs claim that XTO's witnesses provided "murky" testimony, but that testimony is fully supported by documents that Plaintiffs either did not review or did not understand. Plaintiffs' willful lack of understanding after discovery is closed is not a defense to summary judgment. Plaintiffs argue that XTO is obligated to make "monthly payments" but as set forth in XTO's motion for summary judgment, no such obligation exists, and the only lease Plaintiffs cite refutes their contention. Plaintiffs argue for burden-shifting, recasting this case as involving a "recoupment" defense that XTO must prove, but this does not change the outcome because: (1) Plaintiffs still have to prove a claim before an affirmative defense even applies; and (2) the evidence shows an overpayment occurred and recoupment aligned all parties with their contractual terms, thereby fulfilling the parties' express agreement.

Plaintiffs' cross motion for summary judgment, baked into the last section of their opposition brief, fails on its face. *First*, Plaintiffs never alleged a breach of the provision in these leases that is now relied upon, and cannot first assert a new theory of breach at summary judgment. Plaintiffs represented their theory of breach to the Court previously and they cannot now try to save their case with a new one. *Second*, the provision they cite is inapplicable because it relates to suspense resulting from a title dispute. It has no application in an overpayment situation and does not purport to limit XTO's ability to reconcile and correct cumulative payments due to an overpayment. Plaintiffs' motion should be denied as both factually and legally unsupported.

## ARGUMENT

### A. Plaintiffs Do Not Establish A Genuine Issue of Material Fact On Breach Or Damages.

*Celotex Corp. v. Catrett* holds that, after adequate discovery, summary judgment "is proper … against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case," and the movant may discharge its burden by "pointing out … that there is an absence of evidence" on that element. 477 U.S. 317, 322–25 (1986). Rule 56 then requires the nonmovant to "set forth specific facts showing that there is a genuine issue for trial" and not rest on allegations. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

***The Facts Supporting XTO's Motion Are Undisputed.*** XTO's opening brief outlined the record facts supporting its motion, and that Plaintiffs now do not meaningfully dispute.

Plaintiffs are parties to oil and gas leases with XTO. *See* Ex. A-1 - A-20 (the "Leases"). The Leases provide for an 18% royalty on the "net proceeds" realized by XTO from the sale of the gas at the wellhead. *Id.* The leases are associated with wells on the same local gathering system, and the gas produced from those wells is delivered to the McIntyre Central Delivery point, and XTO allocates sales volumes and revenue to the wells from that point. ECF 54 at pp. 10-11; H. Green Dep., Ex. I, at 9:1-11:24, 28:7-29:20. A configuration in the production accounting system failed to aggregate the multiple Trilogy 5HU meters into a single well total, which in turn incorrectly weighted the proportional allocation across the wells. *See* H. Green Dep., Ex. I, at 21:23-22:24, 24. Because Trilogy 5HU's production share was undercounted in the allocation during the affected months, the other eight wells were over-credited, which resulted in overpayments of royalties to lessors associated with those wells, including Plaintiffs. *See* H. Green Dep., Ex. I at 21:14-22:24, 24:21-27:6; XTO_0004-0005.

XTO identified and corrected the formula in the production accounting software, and instituted a prior period adjustment for the five months that the misallocation occurred, by reversing and rebooking well-level sales to reflect corrected Trilogy 5HU volumes and corresponding allocation percentages. *See* H. Green Dep., Ex. I at 64:9-25; ECF 54 at 2, 15-16. Plaintiffs were placed in suspense and future royalties were applied to reduce the overpayment balances until recouped, at which point payments resumed and detailed statements reflecting the adjustments were

issued. *Id.* at 64:9-25, 67:7-12.; Plaintiff Exemplar Check Detail, Ex. H; XTO_0004-0005. Plaintiffs do not dispute the period of suspense, the prior period adjustment, or the calculations performed by XTO as described by Ms. Green and detailed in the documents produced to them. ECF No. 54 at 2, 15-16, 19-20. Plaintiffs acknowledge that checks resumed in November 2024 and do not dispute that the recoupment process has concluded. *See* J. Maloy Dec., Ex. 2, ¶ 47; H. Green Dep., Ex. I, at 67:7-12; ECF 54 at 2.

Based on these undisputed facts, XTO met its burden of showing that there is no evidence supporting the essential elements of either breach or damages on Plaintiffs' breach of contract claim. ECF 53 at 18-23. Under *Celotex*, that showing shifts the burden to Plaintiffs to identify admissible record evidence establishing a triable issue, which they did not do. *See* ECF 54 at 17-21.

***Plaintiffs Do Not Meet Their Reciprocal Burden At Summary Judgment.*** Plaintiffs previously represented to the Court that their breach theory rests on the premise that there was no overpayment prior to XTO's recoupment of royalties. *See* Oct. 3, 2024 Hearing Tr., Ex. E, 24:19-25:23, 28:21-29:2; ECF 27 at 8 & n.8. Now in opposing summary judgment, after the opportunity for full discovery on their contention, Plaintiffs ambiguously do not directly deny or admit an overpayment occurred, but instead make vague implications regarding their prior denials. *See generally,* ECF 54 at 2, 17-21; *see also id.* at 18 (referring to "evidence adduced in discovery regarding overpayment" as "highly suspect"), *id.* at 19 (referring to Plaintiffs' prior denial of "existence and extent of overpayment" at motion to dismiss). These vague assertions are insufficient to defeat XTO's properly supported motion for summary judgment. *See id.* Plaintiffs' written responses and testimony show that Plaintiffs have no evidence to support their denial of an overpayment. *See* Lindsay Golf Group/Betty G. Trust (Travis Lindsay) Dep., Ex. K, at 22:22-23:1; 29:21-23; Andrew Lindsay Dep., Ex. L, at 14:18-15:19; Mary Lindsay Dep., Ex. M, at 12:2-13:4; William Kronen Dep., Ex. N, at 16:5-7; Carol Kronen Dep., Ex. O, at 6:10-14; Charles Lindsay

Dep., Ex. P, at 12:11-16; Patricia Lindsay Dep., Ex. Q, at 13:12-21; John Lindsay Dep., Ex. R, at 9:15-21; Thomas Lindsay Dep., Ex. S, at 13:20–23. Plaintiffs' Answers to XTO Interrogatories, Ex. F (failing to identify any contrary calculations or documents). Plaintiffs' mere denial without affirmative evidence does not defeat summary judgment. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (non-moving party "must present affirmative evidence in order to defeat a properly supported motion"); *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir. 1992) (opponent may not rely upon conclusory allegations in [its] pleadings or in memoranda and briefs); *Tennant v. Range Res.-Appalachia*, LLC, 561 F. Supp. 3d 522, 529, 532 (W.D. Pa. 2021).

***Plaintiffs' Effort to Burden Shift Does Not Excuse Their Lack of Evidence Of Breach*.** Plaintiffs seek to excuse their lack of evidence of breach with burden-shifting. They contend that the fact that "Plaintiffs have no evidence is of no moment" because it should be XTO's burden to disprove breach. ECF 54 at 18. This argument is procedurally and substantively erroneous. The failure to marshal any evidence as to breach, an essential element of their claim, is fatal to Plaintiffs' claim. *See e.g., Celotex Corp.,* 477 U.S. at 322-25. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial." *Tennant v. Range Res.-Appalachia, LLC*, 561 F. Supp. 3d 522, 533 (W.D. Pa. 2021). Where, as here, "Defendant has pointed to an absence of proof on Plaintiffs' part," summary judgment is appropriate when Plaintiffs have no evidence to support their claim. *Id.*

***Plaintiffs' Allegations of Damages Are Not Competent Evidence.*** Plaintiffs also bear the burden to prove recoverable damages with reasonable certainty tied to the contracts they invoke. *See Drummond v. Progressive Specialty Ins. Co*., 142 F.4th 149, 156 (3d Cir. 2025) (citing *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002). But the only "damages" they continue to purport

to identify are calculations and figures that Ms. Green testified constitute the amounts of overpayments that XTO later recouped from future royalties. *See* ECF 54 at 19-20. But XTO moved for summary judgment on exactly this point, because Plaintiffs admitted these figures were copied verbatim from XTO's removal declaration, and are not the product of any independent analysis linking those figures to any purported breach of the leases. *See* Pls.' Answers to XTO Interrog. No. 9, Ex. F; H. Green Dec., ECF 1-4, ¶¶ 6-16; *see also* Thomas Lindsay Dep., Ex. S, 16:25-18:3; John Lindsay Dep., Ex. R, 10:18-25; Patricia Lindsay Dep., Ex. Q, 14:15-22; William Kronen Dep., Ex. N, 17:19-25; Charles Lindsay Dep., Ex. P, 13:18-14:22; Andrew Lindsay Dep., Ex. L, 16:5-17:1.

Plaintiffs attempt to justify their continued reliance at the summary judgment stage on Ms. Green's declaration based this Court's motion to dismiss ruling, where it stated that "because the parties clearly dispute the existence and extent of overpayment, Plaintiffs can properly allege that the loss sustained as a result of the breach of contract is the amount of royalties currently held in suspense…." ECF 54 at 19 (quoting ECF 27). But discovery has now erased the predicate for the Court's preliminary reasoning. The record establishes that an overpayment occurred that was corrected through a recoupment. *See* H. Green Dep., Ex. I, at 16:6-17:14, 21:14-22:24, 38:22-39:8, 48:16-51:24, 64:1-66:25, 67:4-11; Jan. 10, 2024 Correspondence, Ex. D; Exemplar Plaintiff Check Detail, Ex. H; XTO_0004-0005; J. Maloy Dec. ¶ 47. Plaintiffs have not and cannot dispute this evidence. *See* Lindsay Golf Group/Betty G. Trust (Travis Lindsay) Dep., Ex. K at 22:22-23:1, 29:21-23; Andrew Lindsay Dep., Ex. L at 14:18-15:19; Mary Lindsay Dep., Ex. M at 12:2-13:4; William Kronen Dep., Ex. N at 16:5-7; Carol Kronen Dep., Ex. O at 6:10-14; Charles Lindsay Dep., Ex. P at 12:11-16; Patricia Lindsay Dep., Ex. Q at 13:12-21; John Lindsay Dep., Ex. R at 9:15-21; Thomas Lindsay Dep., Ex. S at 13:20-23.

***Plaintiffs Cannot Avoid Summary Judgment By Claiming Testimony Was "Murky."*** Faced with the situation of having no evidence—documentary or testimonial—that supports their

breach of contract allegations, Plaintiffs resort to criticizing XTO's testimony, arguing that "a review of [XTO witness] testimony should indicate to this Court that the explanation submitted by XTO for its action is murky at best." ECF 54 at 2. Plaintiffs argue that "[i]t is clear from reviewing their testimony that they simply don't know the answers concerning the allegation of misallocation of royalties." and therefore "[c]learly there are issues of fact which will have to be resolved." *Id*. These allegations are not supported by record citations. Plaintiffs also do not expound on how these allegations create a genuine issue of material fact in their argument section, other than to again conclusorily claim that XTO's witness testimony was "filled with statements about what they didn't know and that they were the wrong person to be asking." *Id.* at 2, 18. Plaintiffs' arguments also collapse upon a fair reading of the deposition transcripts of XTO's witnesses, and XTO will not reiterate the record evidence that it previously set forth in its opening brief.

While not clear from the nearly 12 pages of excerpts of testimony Plaintiffs recite in the "statement of facts" section in their brief, Plaintiffs appear to rely on an early comment made by Mr. Maloy to Travis Lindsay that "somebody pushed the wrong button," to insinuate uncertainty. ECF 54 at 5-7. But Mr. Maloy testified about that statement in his deposition and clarified that it represented his "casual response to an error in allocation of the well," and that the issue arose in the revenue/production systems in Houston. *See* J. Maloy Dep., Ex. J, 6:20-7:17; 10:1-11:8. Mr. Maloy further testified that XTO communicated both pre-suit and in this case that a misallocation tied to the Trilogy 5HU well's additional metering on the McIntyre system resulted in a temporarily misallocation that XTO recouped. *Id.* at 24:18-25:4. *See also* January 10, 2024 Correspondence, Ex. D; Lindsay Golf Group/Betty G. Trust (Travis Lindsay) Dep., Ex. K at 10-12 (acknowledging Mr. Maloy explained to him in 2023 an accounting error had resulted in an overpayment and payments would likely be suspended for "six months to a year").

In his deposition, when asked how the misallocation occurred at an internal revenue level, which is not even a subject identified in the list of topics XTO ultimately treated as a Rule 30(b)(6) notice, Mr. Maloy identified the appropriate source of that detail, the Houston revenue/production team, because he was "not privy" to the internal configuration mechanics. *See* J. Maloy Dep., Ex. J at 7:2-5. That is neither evasive nor inconsistent but is what one should expect of a landowner relations representative who communicates with owners, but is not the systems configurator. *See* J. Maloy Dep., Ex. J, 5:7-21; 17:10-18:6. There is no triable issue of fact that arises out of Mr. Maloy's truthful testimony, and Ms. Green provided further clarification through her testimony on this subject anyway. *See* H. Green Dep., Ex. I, 34:19-37:22; 56:22-59:12.

Plaintiffs' belated litany of complaints about Ms. Green's testimony are equally unimportant with regards to the issues set forth in XTO's summary judgment motion. Plaintiffs parse her testimony acknowledging the reasonable limits of her personal role and the delineation of what she personally did not do, such as not preparing Pennsylvania DEP reports or not being the specific IT resource who coded the formula update. ECF 54 at 12-16. But those acknowledgments do not conflict with, and certainly do not undermine, her fulsome explanation of the cause, timeframe, correction, and accounting impact of the misallocation, which were the issues covered in their list of topics (which again, was not even a formal Rule 30(b)(6) notice). *See* H. Green Dep., Ex. I, 34:19-37:22, 56:22-59:25. Nor do they supply Plaintiffs with any contrary facts.

Willful ignorance of undisputed facts is not a defense to summary judgment. *See Berry Brothers Buick, Inc. v. General Motors Corporation*, 257 F. Supp. 542, 544 (E.D. Pa. 1966) ("Plaintiff cannot rest on an ignorance of the facts but must obtain from discovery or otherwise information which he should seek to amplify or test by further discovery."). Mr. Maloy accurately identified the Houston revenue/production systems as the source of the technical fix and consistently communicated the overpayment/recoupment process to Plaintiffs. *See* J. Maloy Dep., Ex. J, 7:2-17,

10:6-11:8, 14:4-14. Ms. Green provided the detailed systems explanation, the impacted months, the correction, the prior period adjustments, and the owner-level quantification "to the penny," all of which align with the documents produced and the check detail issued when recoupment concluded. *See* H. Green Dep., Ex. I, 38:22-39:8, 48:21-51:24; Plaintiff Exemplar Check Detail, Ex. H; XTO_0004-0005. Plaintiffs were offered the tools to test XTO's explanation and numbers. They chose not to use them. Plaintiffs' convenient decision to avoid verifying what all of the fact discovery proved to them does not create a genuine issue of material fact after discovery closes.

***There Is No Issue Of Fact Relating To "Monthly Payment" Allegations.*** XTO explained in its motion for summary judgment that the leases did not impose any obligation on XTO to make "monthly" royalty payments and Plaintiffs did not identify any facts supporting the existence of such a duty. ECF 53 at 24-25. Plaintiffs do not address XTO's argument other than to observe that "prior to XTO's suspension of payments" XTO had made payments on a monthly basis. ECF 54 at 20-21. There is no issue of fact on this claim if it is still being pursued. XTO's prior monthly payments happened during a time when net proceeds from sales associated with their interests existed; during the period of recoupment, there were no net proceeds because of the overpayment. *See, e.g.,* January 10, 2024 Correspondence, Ex. D; H. Green Dep., Ex. I, 38:22-39:8, 48:21-51:24; Plaintiff Exemplar Check Detail, Ex. H; XTO_0004-0005.

To the extent Plaintiffs imply XTO's prior payments somehow modified the express terms of the Leases to require monthly payment regardless of net proceeds due, Plaintiffs disclaimed that claim at oral argument. *See* Oct. 3, 2024 Hearing Tr., Ex. E., at 26:21-29:3. Such a theory would also be foreclosed by Pennsylvania law. *See J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 684 (Pa. Super. 2002) ("Pennsylvania case law indicates 'course of performance' can only be used to interpret, but not to supplement, the terms of an existing agreement."); *Barnhart v. Dollar Rent A Car Sys. Inc.*, 595 F.2d 914, 919 (3d Cir. 1979) (even if

course of conduct could modify an unambiguous contractual agreement, Pennsylvania law requires additional consideration or a substitute for consideration to make that modification enforceable).

Plaintiffs also claim for the first time that one of the leases does contain express monthly payment language (an implicit concession that the other 19 do not). *See* ECF 54 at 20-21 (citing Lease A-20, ¶ 2(c)). But the plain language of this lease in fact provides that XTO may make payments "at such other regular intervals as [XTO] deems appropriate" and further that payments may be "subject to adjustments necessary to reconcile and correct the cumulative payments." *Id.* Read as a whole, the clause grants flexibility on payment intervals and preserves XTO's right to true-up payments. It does not transform the royalty obligation, an 18% share of proceeds under ¶ 2(b), into a rigid monthly remittance obligation regardless of reconciliation, nor does it entitle a lessor to retain acknowledged overpayments or bar recoupment of mistaken disbursements. *Id.* Accordingly, there is no contractual language in the Leases obligating XTO to make monthly payment in the absence of actual net proceeds.

**B. Arguing That XTO Failed To Meet Its Burden On An Affirmative Defense Is Not A Claim.**

Plaintiffs argue that because XTO asserted recoupment of overpaid royalties as an affirmative defense, it "bears the burden of proof concerning the correctness of the suspension and recoupment of payments," and Plaintiffs are excused from proving their claim and can defeat summary judgment without producing evidence of breach or damages. ECF 54 at 17. But Plaintiffs expressly disclaimed that they were challenging XTO's recoupment, instead characterizing their claim as one for unpaid royalties. ECF 27 at 8 & n.8; *see also* Oct. 3, 2024 Hearing Tr., Ex. E at 24:19-25:23, 28:21-29:2. Regardless, this argument has no procedural or substantive merit.

***Absent Plaintiffs Meeting Their Burden, Affirmative Defenses Are Not Relevant.*** Pennsylvania law is clear that Plaintiffs, as the parties asserting a breach of contract claim, have the

burden of proof. *Tennant*, 561 F. Supp. 3d at 529-32. An affirmative defense, if proven, would alleviate XTO of liability if Plaintiffs' claim was meritorious. *See* Black's Law Dictionary (11th ed. 2019) (defining affirmative defense as "a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."); *see also Sterten v. Option One Mortg. Corp.,* 479 F. Supp. 2d 479, 483 (E.D. Pa. 2007) ("In other words, assuming a plaintiff's factual allegations make out a cause of action, an affirmative defense bars it. On the other hand, a matter that merely negates an element of the plaintiff's prima facie case is not an affirmative defense. … If there is no violation, there is no cause of action. Absent a cause of action, no defense is necessary.")

Plaintiffs cite no law (and there is none) that suggests XTO's pleading of an affirmative defense alleviates Plaintiffs from satisfying their threshold Rule 56 burden to produce evidence showing that XTO breached the leases and Plaintiffs suffered recoverable damages. To the contrary, courts in this district have rejected this argument. *See Tennant*, 561 F. Supp. 3d at 529-32 (granting operator summary judgment where lessors offered no evidence of breach and could not shift a "prove compliance" burden to operator).

***XTO Proved Its Affirmative Defense of Recoupment.*** While Plaintiffs denied any obligation to prove their claim and admitted a complete lack of knowledge of evidence, *see* ECF 54 at 18, XTO did in fact prove its affirmative defense. XTO submitted unrebutted evidence that an overpayment occurred, and that its recoupment realigned all parties with their express expectations under their respective lease contracts. *See* ECF 53 at 23-24, Section A, *supra*, H. Green Dep., Ex. I, 20:6-22:24, 24:7-26:25, 38:22-39:8, 40:16-41:17, 48:16-51:24, 62:17-67:12; J. Maloy Dec. ¶ 47. XTO's calculations were reflected in royalty check statements each Plaintiff received and in excel spreadsheets provided to Plaintiffs during the course of litigation. *See* Plaintiff Exemplar Check Detail, Ex. H; XTO_0004-0005. Plaintiffs do not contend that the data provided by XTO is wrong

or the calculations reflected in their statements do not add up. *See generally,* ECF 54. Plaintiffs do not claim that XTO failed to provide the underlying data necessary for Plaintiffs or an expert to independently compute volumes or royalties. *Id.* There is no assertion that the data set was incomplete or unusable for analysis. *Id.* As such, Plaintiffs muster no evidence to the contrary and XTO would be entitled to summary judgment even if it did have an obligation to carry the burden to prove the propriety of recoupment in the absence of proof of breach or damages by Plaintiffs in the first place.

### C. Plaintiffs' Motion Based On An Inapplicable Lease Provision Fails In Law And In Fact.

Appended to their brief in response is a "countermotion for summary judgment" where Plaintiffs contend that Paragraph 10 of the Penn Virginia Leases and Paragraph 4 of the Charles Lindsay Lease categorically prohibit XTO from suspending royalty payments in the circumstances presented here. ECF 54 at 21-23. Plaintiffs frame these provisions, which on their face permit suspension of payments in the event of a title dispute, as contractually barring XTO's recoupment of overpayments. *Id.* at 3-5 (Ex. A-1-19 at Paragraph 10, Ex. A-20 at Paragraphs 2(c) and 4); 21-23 (asserting the suspension provisions are limited to adverse title claims).

There are dispositive procedural and legal barriers to this so-called "motion." Plaintiffs did not identify this theory in their complaint or during discovery and did not identify this provision in response to XTO's discovery requests. *See* Pls.' Answers to XTO Interrogatory No. 12 (Ex. F). This is a waiver. *See, e.g., T.N. Incorporation, LTd. v. Fid. Nat'l Info. Servs.,* 2022 U.S. Dist. LEXIS 56401, at *51 n. 24 (E.D. Pa. March 29, 2022) (non-moving party not permitted to pursue breach theory raised for first time in opposition to summary judgment on the basis that moving party would be prejudiced).

The lease language also does not support Plaintiffs' argument. The vast majority of the leases provide that if the lessee "is advised of or receive[s] notice of an adverse claim or of defective

title affecting the Land … which could affect all or a part of the payments due hereunder, then Lessor expressly authorizes Lessee, at Lessee's sole discretion, and without liability to withhold payment … until such time as said adverse claim is resolved or title cured. …" *See* Ex. A-1-A-19, ¶ 10. This language provides specific authorization in the event of adverse title claims, it does not purport to limit XTO's rights to make ordinary course accounting adjustments in the event of an overpayment that results in a lessor receiving the payments they are entitled to under the leases. *See* Ex. A-1-A-20, ¶ 2; ECF 53 at 26-28, 31-32 (explaining that recoupment implements, rather than contradicts, the leases' royalty clauses). Paragraph 4 of the remaining lease authorizes suspension in the event of a title dispute but also contains no language restricting XTO's ability to redress overpayments. *See* A-20, ¶ 4. There is no express language in any of these provisions that prohibit ordinary course accounting corrections that align with the parties' express agreements under the leases.

In sum, the express language of these provisions does not support Plaintiffs' newly-minted argument that they are contractually entitled as a matter of law to recover amounts of undisputed overpayments. Plaintiffs' counter motion for summary judgment must be denied.

**CONCLUSION**

For the foregoing reasons, Defendant XTO Energy Inc. is entitled to summary judgment on Plaintiffs' Amended Complaint.

REED SMITH LLP

Dated: November 24, 2025

*/s/ Justin H. Werner*

Justin H. Werner
Pa I.D. No. 203111
jwerner@reedsmith.com
Thomas J. Galligan
Pa I.D. No. 317941
tgalligan@reedsmith.com
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3131
Fax: (412) 288-3063

*Counsel for XTO Energy Inc.*

**CERTIFICATE OF SERVICE**

I certify that on November 24, 2025, a true and correct copy of the foregoing has been served by ECF upon the following individuals:

Alexander H. Lindsay, Jr.
The Lindsay Law Firm, P.C.
110 East Diamond Street, Suite 301
Butler, Pennsylvania 15001

*/s/ Justin H. Werner*